UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.   3:04-cr-206-J-20MCR

BRUCE MAINOR

_____

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Defendant's Amended Motion to Suppress, for Return of Property, and Motion In Limine with Incorporated Memorandum of Law (Doc. No. 250) filed November 8, 2004. The Government filed a timely response opposing the instant Motion. *See* Doc. No. 252. The Court conducted a hearing on the matter and for the reasons set forth below, recommends the instant motion be **DENIED**.

I. Report

A. Factual Summary

As part of an ongoing narcotics investigation, the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida authorized Detective Charles Bates ("Detective Bates") of the Jacksonville Sheriff's Office to intercept wire communications of Defendant's cellular telephone. *See* Government's Exhibit 1A. Pursuant to the authorization, Detective Bates intercepted approximately 290 alleged drug-related conversations between Defendant and co-defendant Humberto Antonio. *See* Government's Exhibit 2A at ¶ 4. Detective Bates subsequently applied for and obtained

a state-issued warrant for Defendant's arrest, along with a state-issued warrant for the search of Defendant's residence located at 7045 Deauville Road, Jacksonville, Florida.

The Jacksonville Sheriff's Office executed both warrants on July 12, 2004. During the search of Defendant's residence, officers found approximately $50,000 in cash, cellular telephones, marijuana, firearm parts and ammunition. See Doc. Nos. 161, 162. Later the same day, Bates, along with two other officers, reported to an apartment located at 5800 West University Boulevard ("the apartment"), where Defendant's father, Julius Mainor, Sr. ("Mainor, Sr."), allowed officers to enter the residence and conduct a search of the premises. The officers became familiar with the residence and believed it to be the home of Mainor, Sr. as a result of information gathered from the intercepted wire communications as well as their ongoing surveillance of Defendant. (Tr. 87:11-12, 92:15-20, 56:12-21). During the search, the officers seized an assault rifle, gun case, ammunition, marijuana and a glass beaker containing narcotics residue. See Doc. No. 250 at ¶ 1.

A federal grand jury indicted Defendant for conspiracy to distribute cocaine and cocaine base on July 29, 2004. See Doc. No. 1. He was arraigned on the charge and filed a notice of acceptance of general discovery on August 5, 2004. See Doc. Nos. 86, 88. Thereafter, the Government produced discovery items including affidavits relative to the search and arrest warrants, a report of the search conducted at 5800 West University Boulevard, and an inventory of the items seized. Defendant subsequently filed the instant motion challenging the validity of the arrest warrant, the search warrant and the search conducted at the apartment.

### B. Issues Presented by Defendant

Based upon several independent theories, Defendant seeks to suppress the items recovered at the apartment. First, Defendant argues the officers conducted a warrantless search of the apartment in violation of his Fourth Amendment rights. Second, Defendant argues the officers did not have lawful consent to search the apartment. In support of his argument, Defendant maintains that his brother, Julius Mainor, Jr. ("Mainor, Jr.") is the actual leaseholder of the apartment, and that officers searched it over Julius Mainor Jr.'s objections and demands for a search warrant. Third, Defendant argues the affidavits made in application for the arrest and search warrants contained intentionally false statements and failed to establish probable cause.

### C. Issues Presented by the Government

The Government initially questions Defendant's standing to challenge the search of the apartment. The Government maintains that, in order to challenge the search under the Fourth Amendment, Defendant must first establish that he had a legitimate expectation of privacy in the premises. Next, the Government argues that, even if Defendant has standing to challenge the search, officers obtained lawful consent from Julius Mainor, Sr. prior to searching the apartment. Finally, the Government argues the facts alleged in the affidavits reveal substantive evidence to support the state court's probable cause findings.

### D. Issues Reviewed by the Court

A hearing on the matter was conducted on November 16, 2004, where the Court considered the following issues: (1) whether Defendant has standing to challenge the search conducted at the apartment; (2) whether officers received lawful consent to search the residence; (3) whether the affidavits made in application for the arrest and search warrants contained reckless and false statements; and (4) whether the facts alleged in the affidavits support the state court's findings of probable cause. In forming the following recommendations below, the Court considered the parties' memoranda of law, oral arguments and the witness testimony of Mainor, Jr., Mainor, Sr. and Detective Bates.

## II. Recommendations

### A. Defendant's Standing to Challenge the Search of the Apartment

Defendant argues that, under the Fourth Amendment, he possessed a legitimate expectation of privacy in the apartment. Alternatively, Defendant argues Article 1, section 23 of the Florida Constitution provides an "additional right of privacy" not provided by federal law. (Tr. at 68:14-18).

The United States Supreme Court has held that under the Fourth Amendment, courts should examine the issue of standing "within the purview of substantive Fourth Amendment law." Rakas v. Illinois, 439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978). Accordingly, inquiry into Defendant's standing begins with the question of whether the search of the apartment and the seizure of items violated his Fourth Amendment rights. Specifically, Defendant bears the burden of establishing that he possessed a legitimate

-4-

expectation of privacy in the premises searched or in the items seized. United States v. Tobin, 890 F.2d 319, 324 (11th Cir. 1989) *citing* Rakas, 439 U.S. at 130, n.1, 99 S. Ct. at 424, n.1. "A legitimate expectation of privacy is an expectation actually and subjectively held by the defendant and one which society is prepared to recognize as reasonable." Tobin, 890 F.2d at 324 *citing* Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979).

During the hearing, Defendant presented the testimony of his brother, Mainor, Jr. Mainor, Jr. testified that he was the sole leaseholder of the apartment and that Defendant visited periodically. (Tr. 13:1-5, 15:15-20). Mainor, Jr. further testified that, although Defendant regularly received mail at the apartment, Defendant did not have a key to the premises and was permitted to use the apartment only when Mainor, Jr. was present. (Tr. 15:23-16:7). Additionally, Mainor, Jr. testified that he had no knowledge of the items seized and that he was unaware Defendant kept anything other than a change of clothes in the apartment. (Tr. 23:2-11).

Mainor, Sr. testified that he sometimes asked Defendant to come over to the apartment to help care for his brother and that Defendant normally visited two or three times of week. (Tr. 48:6-10., 49:9-13). Mainor, Sr. further testified prior to the search he was unaware that Defendant stored a gun in the apartment. (Tr. 46:20-22). According to Mainor, Sr., after officers seized the gun, Mainor, Jr. informed him that the gun was registered and belonged to Defendant. (Tr. 46:23-15). Regarding the glass beaker and marijuana seized, Mainor, Sr. testified that the items belonged to him. Mainor, Sr. explained that as a diabetic, he is required to measure his daily food and

beverage intake, and therefore used the beaker as a measuring cup. (Tr. 45:14-22). Mainor, Sr. further explained that he used the marijuana for medicinal purposes to treat his cataracts. (Tr. 46:6-13).

In some instances, a person may have a legitimate expectation of privacy in the home of someone else. See Minnesota v. Carter, 525 U.S. 83, 119 S. Ct. 469 (1998) (an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not); Minnesota v. Olson, 495 U.S. 91, 110 S. Ct. 1684 (1990) (individual's status as an overnight guest in another's home creates an expectation of privacy in the home); United States v. Torres, 705 F.2d 1287 (11th Cir. 1983) (guests' who adopted another's residence as their own acquired a legitimate expectation of privacy in the house). In this case however, the Court finds Defendant simply made no showing that he had a legitimate expectation of privacy in his brother's apartment. Based upon the evidence presented, it appears Defendant periodically visited his brother in the apartment, to which he had no independent access. Defendant had no key to the apartment which would allow him to come and go or to admit and exclude others. In fact, there is no indication Defendant maintained a regular or continuous presence in the apartment or that he was allowed to remain there when his brother was absent. Because Defendant failed to establish he maintained a reasonable expectation of privacy in the apartment, the Court concludes that Defendant has no legitimate standing to assert a Fourth Amendment challenge to the search of the apartment.

Moreover, the undersigned finds unconvincing Defendant's alternative position that Article 1, section 23 of the Florida Constitution affords him an "additional right of privacy." The statute provides "every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." Fla. Const. Art.1 § 23. While the state privacy provision affords greater protection than that of the federal privacy provision, Article 1, section 23 does not guarantee against all intrusion into the life of an individual. City of Miami v. Kurtz, 653 So. 2d 1025 (Fla. 1995). Most significant, based upon the circumstances presented, Defendant has failed to demonstrate how the provision is applicable in the present case.

### B. Consent to Search the Apartment

Even if Defendant established he has a legitimate expectation of privacy in the apartment, and therefore standing to challenge the search, the Court finds that the search was conducted pursuant to lawful consent. The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific items. Payton v. New York, 445 U.S. 573, 100 S. Ct 1371 (1980). The prohibition however is inapplicable to situations in which voluntary consent is provided by the individual whose property is searched, see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S. Ct. 2041 (1973), or from a third-party whom police, at the time of entry, reasonably believe possesses common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 110 S. Ct 2793 (1990). A search conducted pursuant to a third-party's consent is valid even if it is later determined that the third-party did not

actually have such authority, so long as police, at the time of entry, reasonably believe the third-party possesses authority to consent to a search of the premises. Id. The burden of establishing that a third-party possesses common authority over the property searched rests with the Government. Id.

Through its direct examination of Detective Bates, the Government established that when Detective Bates, along with two other officers, arrived at the apartment, Mainor, Sr. answered the door. (Tr. 57:19-20). The officers advised Mainor, Sr. that Defendant had been arrested and that they believed firearms were in the apartment. (Tr. 57:10-11, 58:8-15). When the officers requested permission to search the apartment, Mainor, Sr. complied and allowed the officers to enter. (Tr. 58:8-15). While conducting the search, the officers proceeded to a rear bedroom where they discovered Mainor, Jr. (Tr. 60:17-18). Mainor, Jr. asked Mainor, Sr. if the officers had a search warrant. (59:8-17). Mainor Sr. replied that the officers did not have a warrant and Mainor, Sr. and Mainor, Jr. began arguing. Id. Despite the argument, during the officers' search of the apartment, Mainor., Sr. remained very cordial and cooperative and even assisted in the search by leading the officers around the apartment. (Tr. 58:17)

On cross-examination of Mainor, Jr. and Mainor, Sr., the Government established that the utilities for the apartment were billed solely to Mainor, Sr. and that Mainor, Sr.'s state-issued identification card listed the apartment as his permanent address. (Tr. 27:13-15, 39:19-23). Additionally, Mainor, Sr. testified that he had intermittently lived in the apartment, along with his son, for the past three years. (Tr.

-8-

36:14-24). Mainor Sr. further testified that he stored clothes in the apartment and that he possessed a key to the apartment. (Tr. 32:4-9).

Regarding the search, Mainor, Sr. testified that after spending the night in the apartment, on the morning of July 12, 2004, he answered the door when the officers arrived. (Tr. 41:5). When the officers asked if they could come into the apartment, Mainor, Sr. replied "yeah" and allowed the officers to enter. Id. Mainor, Sr. stated that, because he did not have anything to hide, when the officers asked if they could search the apartment, he replied that he did not care. (Tr. 41:6-22).

Here, when officers arrived at the apartment, Mainor, Sr., who had spent the night in the apartment, answered the door. After speaking with the officers, Mainor, Sr. gave them permission to enter and lead officers through the apartment as they conducted the search. Additionally, by his own admission, Mainor, Sr. has lived in the apartment with his son for approximately three years. Therefore, based on the evidence presented, the Court finds the Government met its burden of establishing a reasonable belief that Mainor, Sr. possessed common authority over the premises when he allowed the officers to enter and search the apartment.

On the issue of whether Mainor, Sr. voluntarily consented to the search, Mainor, Sr. initially testified that he allowed the officers to enter the apartment only because they knocked on the door with their guns drawn. (Tr. 42:8-15). Mainor, Sr. later testified that the officers were never hostile towards him, did not threaten him and that he only saw a gun. (Tr. 42:18-21, 44:20-22, 53:6-10). Detective Bates testified that, when the officers knocked on the door of the apartment, two were carrying holstered

weapons and that he was carrying a firearm concealed in a fanny pack. (Tr. 57:14-58:6). Detective Bates further testified that, although the officers were clearly armed, at no point did they draw their weapons. Id.

Because there is an inconsistency in the testimony regarding whether the officers requested entry into the apartment with their weapons drawn, the undersigned is required to make a credibility determination. See United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996); United States v. Ramirez-Chilel, 289 F.3d 744, 749-50 (11th Cir. 2002). In making the credibility findings, the Court considered the demeanor of the witnesses on the stand, their interest in the outcome of the case, their response to questions both on direct and cross-examination and the consistencies and inconsistencies in their testimony.

Here, Mainor, Sr. as the Defendant's father clearly has an interest in outcome of the case. Moreover, both on direct and cross examination, Mainor, Sr. consistently testified that when the officers arrived and the apartment, they were never hostile towards him. Though Mainor, Sr. initially testified that officers knocked on the door with their weapons drawn, he later modified his testimony to assert that he only saw the officers carrying firearms and that he allowed the officers to enter the apartment because he did not have anything to hide. Therefore, on the issue of whether Mainor, Sr. provided voluntary consent to search the apartment, the Court finds the testimony of Detective Bates more credible than that of Mainor, Sr. Accordingly, the Court further finds that the officers conducted the search of the apartment pursuant to lawful consent.

## C. The Affidavits Made in Support of the Arrest and Search Warrants

A defendant bears the burden of establishing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit. Franks v. Delaware, 438 U.S. 154, 155-6, 98 S. Ct. 2674, 2676 (1978). In the event an allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false statements set aside, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. Id. Here, Defendant presented absolutely no evidence establishing that a false statement was included in the search warrant affidavit and therefore failed to meet his burden of proof.

Furthermore, Defendant's counsel argues that, in accordance with Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983), the mere conclusory statements contained in the affidavits did not serve a basis for the state magistrate's finding of probable cause. The Court disagrees. The statements in the affidavits were based largely in part on information gathered from the 290 intercepted conversations between Defendant and co-defendant Humberto Antonio as well as police surveillance. The affidavits include references to specific dates, parties identified by name and events observed by the affiant. Therefore, based upon its review, the Court finds the contents of the affidavits sufficient to establish probable cause. Accordingly, the warrants at issue are valid and the fruits of the search are therefore admissible.

After due consideration, it is

**RECOMMENDED**:

Defendant's Amended Motion to Suppress, for Return of Property, and Motion In Limine with Incorporated Memorandum of Law (Doc. No. 250) be **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of February, 2005.

*Monte C. Rich*
MONTE C. RICHARDSON
United States Magistrate Judge

Copies to:

Counsel of Record

-12-